OPINION *Page 2 
{¶ 1} Defendant-Appellant, Shan Blackshear, appeals from his conviction and sentence for one count of felonious assault with a firearm specification and one count of having a weapon under disability. Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} On April 9, 2007, appellant was indicted by the Stark County Grand Jury on one count of felonious assault in violation of R.C.2903.11(A)(1) and/or (2), a second degree felony, with a firearm specification pursuant to R.C. 2941.145, one count of having a weapon under disability in violation of R.C. 2923.13, a third degree felony, and one count of aggravated menacing in violation of R.C. 2903.21(A), a first degree misdemeanor. On April 13, 2007, appellant appeared and entered a not guilty plea.
 {¶ 3} On May 22, 2007, the matter proceeded to trial before a jury. Prior to the presentation of evidence the trial court granted appellant's motion to sever the misdemeanor count of aggravated menacing and the trial proceeded on the remaining charges. After voir dire, the appellant stipulated that he was previously convicted of a felony offense of violence (i.e. felonious assault) in 1994. On May 23, 2007, after hearing the evidence and receiving the instructions from the trial court, the jury found appellant guilty of felonious assault with a firearm specification and having a weapon under disability. Sentencing was deferred.
 {¶ 4} On June 1, 2007, the State voluntarily dismissed the aggravated menacing charge and the matter proceeded to sentencing. Appellant was sentenced to serve an eight (8) year sentence for felonious assault, a five (5) year sentence for having a weapon under disability and a mandatory consecutive three (3) year term of *Page 3 
incarceration for the firearm specification. The trial court further ordered the sentences to be served consecutively for an aggregate sixteen (16) year term of imprisonment.
 {¶ 5} It is from this conviction that appellant now seeks to appeal setting forth the following assignments of error:
 {¶ 6} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 7} "II. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."
 I {¶ 8} Appellant argues in his first assignment of error that the jury's verdicts of guilty on the charges of felonious assault with a firearm specification and having a weapon under disability, were against the manifest weight and sufficiency of the evidence. Essentially, appellant argues that the evidence presented was not sufficient to identify the appellant as having committed the offenses. We disagree.
 {¶ 9} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of *Page 4 
fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 11} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541 super ceded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 12} R.C. 2903.11(A) provides a definition of felonious assault and states in pertinent part as follows:
 {¶ 13} "(A) No person shall knowingly do either of the following:
 {¶ 14} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 15} "(2) Cause or attempt to cause serious physical harm to another or another's unborn by means of a deadly weapon or dangerous ordinance."
 {¶ 16} R.C. 2941.145 defines the pertinent firearm specification concerning the use of a firearm to facilitate an offense and states as follows: "the offender had a firearm *Page 5 
on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated the offender possessed the firearm, or used it to facilitate the offense." A firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely on circumstantial evidence." R.C.2923.11(B) (2).
 {¶ 17} R.C. 2923.13 provides the definition of having a weapon while under a disability and states in pertinent part as follows:
 {¶ 18} "(A) Unless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use a firearm or dangerous ordinance, if any of the following apply:
 {¶ 19} "(2) The person is under indictment for or has been convicted of any felony offense, which if committed by an adult, would have been a felony offense of violence."
 {¶ 20} In this case, the state presented the testimony of seven witnesses including the victim, Jamal Owens. Additionally, appellant stipulated to having a prior conviction for an offense of violence in 1994.
 {¶ 21} Jamal Owens testified that on February 26, 2007, around 8:50 A.M. he drove with Jerry Gordon to the home of Melissa Pinney at 1110 Smith Avenue, Canton, Ohio. Owens stated that he and Gordon went to the Pinney residence to pick up some patio furniture. Owen testified that Gordon parked the vehicle in an alley near the *Page 6 
residence. Owen testified that Gordon stayed in the vehicle and he went to the door of the residence to speak with Pinney. He stated that the appellant answered the door and Pinney stood slightly inside the entrance.
 {¶ 22} Owen stated that he asked Pinney where he could find the patio furniture and she said it was gone. Owen testified that the defendant got very aggressive and the two got into a confrontation. Owen stated that the appellant then pulled out a gun and pointed the gun at his face. Owen stated that he threw up his hands, started walking backwards, and said, "I didn't come here for all that * * * meaning trouble". Owen then turned and went down the front steps. He stated that he heard a loud bang and realized he had been shot in the leg. He then crawled across the lawn, climbed over the fence and got into the parked vehicle.
 {¶ 23} Gordon then drove Owen to Aultman Hospital. Owen testified that he underwent surgery at Aultman Hospital to insert a metal rod to repair his leg bone that was shattered by the bullet.
 {¶ 24} Jerry Gordon testified that he observed Owen go into the Pinney residence. Gordon testified that approximately ten minutes later he observed Owen running down the steps. He then saw a man in a white tank top come out onto the porch and fire a shot at Owen. He testified that he immediately drove Owen to the emergency room at Aultman Hospital.
 {¶ 25} Officer McCartney, of the Canton Police Department, testified that he responded to Aultman Hospital where he made contact with Owen and began his investigation. Office McCartney testified that he subsequently met Melissa Pinney at the scene and she directed him to a residence at 2917 Long Avenue, N.E. where he *Page 7 
recovered a silver single action, .45 caliber Ruger revolver. Officer McCartney also testified that after recovering the weapon and taking a statement from Melissa Pinney he put together a photo line-up which included the appellant's photo. Officer McCartney testified that Owen picked the appellant out of a photo line-up as being the person who fired the shot. Finally, Officer McCArtney collected the bullet that was recovered from Owen's leg and submitted it to the crime lab.
 {¶ 26} Michael Short, a criminalist from the Stark County Crime Lab, testified, that the single action, .45 caliber Ruger revolver was an operable firearm. He further testified that based upon his comparative analysis, the rifling impressions on the bullet collected from Owen's leg were indicative of a bullet fired from the silver single action, .45 caliber Ruger revolver recovered during the investigation.
 {¶ 27} Based upon our review of the record, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly caused serious physical harm to Owen with a deadly weapon, i.e. an operable firearm, while having a weapon under disability. We further find that the jury in convicting appellant, did not lose its way so as to create a manifest miscarriage of justice.
 {¶ 28} Accordingly, appellant's first assignment of error is hereby overruled.
 II {¶ 29} In the second assignment of error, appellant alleges that the State committed prosecutorial misconduct. Specifically, appellant argues that the State's redirect examination, regarding a defect in the jeans worn by the victim and the black nylon shorts worn by the victim was misleading and prejudicial. *Page 8 
 {¶ 30} The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 300. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor.Id. A reviewing court is to consider the trial record as a whole and is to ignore harmless errors "including most constitutional violations."Id., quoting United States v. Hasting (1983), 461 U.S. 499, 508-509,103 S.Ct. 1974, 1980-1981, 76 L.Ed.2d 96. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v. Carter,72 Ohio St.3d 545, 557, 1995-Ohio-104, 651 N.E.2d 965, 976-977.
 {¶ 31} A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v.United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v. Overholt, Medina App. No. 02CA0108-M, 2003-Ohio-3500, at paragraph 47, citing State v. Smith
(1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883, 885 "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill (1996), 75 Ohio St.3d 195, 204,661 N.E.2d 1068, 1078, citing Donnelly v. DeChristoforo (1974),416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431. Furthermore, the appellant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the *Page 9 
proceeding would have been different. State v. Loza (1994),71 Ohio St.3d 61, 78, 641 N.E.2d 1082, 1101, overruled on other grounds.
 {¶ 32} In this case, the criminologist, Michael Short, testified on cross-examination that he had analyzed a pair of black nylon shorts which had been submitted to the crime lab as having been worn by the victim. Short testified that the shorts had a circular defect in the back inner left thigh region of the garment consistent with a gunshot. T.I.258-259. Short was also asked to examine the blue jeans allegedly worn by the victim. Short testified that the jeans had not been submitted to him for analysis, but upon examination during trial, Short stated that the jeans appeared to have a "snagging defect" which may not be consistent with a gunshot. Appellant's counsel then asked Short:
 {¶ 33} "Defense: Is it your position then that the person wearing these blue jeans and these black shorts, that a single bullet in this case did not penetrate both garments?
 {¶ 34} "Short: I can not testify as to how the individual who was wearing the shorts with the bullet defect in them actually had them on his body." T.I.260.
 {¶ 35} On redirect examination, the State questioned Short as follows:
 {¶ 36} "State: These jeans you were not asked to examine them, were you?
 {¶ 37} "Short: That's correct.
 {¶ 38} "State: Have you ever examined clothing in a case involving a firearm wound in which the jeans have been worn so low that a bullet passed to the undergarment and not through the jeans?
 {¶ 39} "Short: Yes, I have. *Page 10 
 {¶ 40} "State: And you can't tell the ladies and gentlemen of the jury whether the victim in this case had these on at the time he was shot?
 {¶ 41} "Short: That's correct.
 {¶ 42} "State: From the naked eye, does it appear that there is any gunshot residue on those jeans?
 {¶ 43} "Short: No, there doesn't. As I during cross-examination stated, the defect itself does not have the appearance of a bullet defect to me." T. I.271.
 {¶ 44} Upon review we do not find that this questioning rises to the level of prosecutorial misconduct. However, assuming arguendo that there was misconduct in the State's re-direct, we do not find that the State's comments prejudicially affected any substantial rights of the appellant in light of the other evidence presented which, we have previously held, supported appellant's conviction for the offenses of felonious assault with a firearm and having a weapon under disability. *Page 11 
 {¶ 45} Accordingly, appellant's second assignment of error is hereby overruled.
 {¶ 46} The judgment of the Stark County Court of Common Pleas is hereby affirmed.
 Edwards, J., Hoffman, P.J. and Delaney, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1